IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| GLASKER JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 114-221 |
| ) | |
| CITY OF WADLEY; HAROLD MOORE, ) | |
| Mayor; FNU LEWIS, City of Wadley ) | |
| Police Bureau Chief; and ANANDE ) | |
| GAITER, Officer #332, ) | |
| all parties in their official and individual ) | |
| capacity, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in the above-captioned case. Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). As explained below, Plaintiff has been given an opportunity to amend his complaint, and it is the amended complaint that is now before the Court for screening.

### I.  SCREENING OF THE AMENDED COMPLAINT

#### A.  BACKGROUND

Plaintiff names the following Defendants: (1) City of Wadley, Georgia; (2) Harold Moore, Mayor of Wadley; (3) FNU Lewis, Chief of Wadley Police Bureau; and (4) Anande Gaiter, Officer #332. (Doc. no. 10, pp. 1, 2.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On October 20, 2013, Plaintiff and a companion were stopped at the corner of North Main and Cheatham Street in Wadley, Georgia, trying to decide which way to go. (Id. at 4.) "The officer," presumably Defendant Gaiter, effectuated a traffic stop, and asked Plaintiff for his insurance and driver's license. (Id.) Plaintiff did not have any identification, and thus by implication no driver's license, but he stated his name and address to Defendant Gaiter. (Id.) After checking the information provided by Plaintiff, Defendant Gaiter arrested Plaintiff for driving while license suspended. (Id.) Law enforcement officers, presumably to include Officer Gaiter, detained and searched Plaintiff as part of the arrest procedure. (Id. at 5.) Officer Gaiter issued Plaintiff a total of three citations, one for driving while license suspended, one for failing to stop at a stop sign, and one for giving false information to a police officer. (Id. at 2-3.)

After booking Plaintiff, Defendant Gaiter gave Plaintiff an appearance date of November 25, 2013, and threatened Plaintiff that she would make sure Plaintiff stayed in custody until that court date. (Id.) However, Plaintiff posted an $800.00 bond and was released. (Id. at 2-3.) Without providing any details, Plaintiff maintains that while in custody, his due process and Miranda rights were violated. (Id. at 3.)

When Plaintiff appeared for court on November 25, 2013, his case was continued until February 24, 2014. (Id. at 3.) When Plaintiff appeared on February 24th, Defendant Gaiter, the state's "star witness," failed to appear, and all three of Plaintiff's charges were dismissed. (Id.) Despite the dismissals, the City of Wadley refuses to "clear plaintiff['s] name in the city and state wide registry." (Id.) Thus, restrictions remain on Plaintiff's driving privileges, which causes him to pay higher insurance costs than he would otherwise have to pay without the restrictions. (Id.) Although he does not identify any person that he has spoken with, when Plaintiff called the City of Wadley to try to resolve the matter, "the staff" stated that he was harassing them, as well as Defendant Lewis, and started hanging up when Plaintiff called. (Id.)

Plaintiff does not identify his race, but states that by hanging up on him, the unidentified "staff" are engaging in racial profiling. (Id.)

Plaintiff asserts that his false arrest in Wadley "makes the City of Wadley, Mayor Harold Moore, and the City of Wadley police bureau chief Lewis, and officer ana[n]de gaiter #332 and its officers personally liable due to their lack of training and negligence in not following their duty." (Id. at 6.) Plaintiff seeks monetary damages from each Defendant to compensate him for violations of his due process and equal protection rights, as well as for the anguish and humiliation caused by his arrest. (Id.) Plaintiff also requests an order that his bond money be returned to him. (Id. at 5.)

**B.   DISCUSSION**

**1.   Legal Standard for Screening.**

The amended complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. § 1915(e)(2)(B). A claim is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. The amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Finally, the court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006).

### 2. Plaintiff's Complaint Should Be Dismissed for Failure to Follow a Court Order.

A district court has authority to manage its docket to expeditiously resolve cases, and this authority includes the power to dismiss a case for failure to prosecute or failure to comply with a court order. Equity Lifestyle Props., Inc. v. Florida Mowing & Landscape Serv., Inc., 556 F.3d 1232, 1240 (11th Cir. 2009) (citing Fed. R. Civ. P. 41(b)); see also Eades v. Alabama Dep't of Human Res., 298 F. App'x 862, 863 (11th Cir. 2008). Moreover, dismissal without prejudice is generally appropriate pursuant to Rule 41(b) where a plaintiff has failed to comply with a court

4

order, "especially where the litigant has been forewarned." Owens v. Pinellas Cnty. Sheriff's Dep't, 331 F. App'x 654, 655 (11th Cir. 2009) (citing Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989)); see also Loc. R. 41.1(b) (Court may dismiss an action *sua sponte* for "willful disobedience or neglect of any order of the Court").

Here, the Court provided Plaintiff explicit instructions on the method for amending his complaint if he wanted to pursue this case, including the admonitions to refrain from reciting a laundry list of legal terminology without explaining how a particular entity or individual may have violated a specific policy, code, regulation, statute, etc., as well as to write the body of his complaint in sequentially numbered paragraphs containing only one act of misconduct per paragraph but including the names of each and every individual who participated in such misconduct. (See doc. no. 9, pp. 3-4.) The Court also identified quotes from Benjamin Franklin and pages of legal quotes under the heading of "Freedom of Movement and Travel" as deficiencies with the original complaint. (See id. at 3.)

Inexplicably, Plaintiff again started his amended complaint with the same laundry list of legal terminology and a general assertion that each Defendant was "acting under the color of law, acting under any statute, ordinance, code regulation, custom, rule, official policy practice. Custom, code regulation, and were following the city of Wadley policy and custom. Violation of civil rights." (Compare doc. no. 1, ¶¶ 1-3 with doc. no. 10, ¶¶ 1-2.) Plaintiff also again attached, without specific explanation and in contravention of the direction not to state "see attached documents," three pages of legal quotes under the heading of "Freedom of Movement and Travel."[1] (Compare doc. no. 1, pp. 8-10 with doc. no. 10, pp. 8-10.) The Court has already

---

[1] The lone reference to the attachment states, "Also see freedom of movement and travel." (Doc. no. 10, ¶ 14.)

5

explained to Plaintiff that this type of generalized pleading and inclusion of extraneous material does not satisfy the dictates of Federal Rule of Civil Procedure 8.

Because Plaintiff is proceeding IFP, the Court finds that the imposition of monetary sanctions is not a feasible sanction for disobeying the Court's instructions about amending. Thus, Plaintiff's case should be dismissed for failing to follow the Court's instructions regarding amending his complaint.

### 3. Plaintiff's Amended Complaint Should Also Be Dismissed for Failing to State a Claim Upon which Relief Can Be Granted.

In addition to violating the terms of the order to amend, the amended complaint fails to state a claim upon which relief can be granted.

#### a. Plaintiff Fails to State a Claim for False Arrest.

Plaintiff argues that he was the victim of a false arrest. The elements of a false arrest claim are a "warrantless, malicious arrest or deprivation of liberty without probable cause." Wickers v. Utsey, No. 3:07cv290, 2008 WL 4999247, at *3 (N.D. Fla. 2008) (citing Baker v. McCollan, 443 U.S. 137 (1979).) However, it is well-settled that the existence of probable cause "is an absolute bar to a section 1983 action for false arrest." Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990). A law enforcement officer has probable cause to effectuate an arrest if the facts and circumstances would cause a prudent person to believe an individual has committed, is committing, or is about to commit an offense. Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990). Minor offenses, even misdemeanors or traffic violations, can validly serve as the basis for a full custodial arrest. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." Marx, 905 F.2d at 1507.

Here, although the three traffic charges against Plaintiff were eventually dismissed when Defendant Gaiter did not appear for court, Plaintiff acknowledges he received three traffic citations on October 20, 2013. (Doc. no. 10, ¶ 7.) He also acknowledges he was unable to produce a valid driver's license when asked, and the dismissal of the driving on a suspended license charge has apparently done nothing to cure the underlying invalid license because Plaintiff complains in this case that "[t]he driving exclusion still remained in effect to this day." (Id. ¶¶ 11, 14.) Nor does Plaintiff allege there was no probable cause for effectuating a traffic stop based on failing to stop at a stop sign or contest that he gave false information to a police officer. In sum, that Plaintiff benefitted from Defendant Gaiter's failure to appear for court in the form of dismissed charges does not catapult him into a constitutional claim for false arrest.

### b. Plaintiff Fails to State a Claim Regarding the Events Associated with His Arrest.

Plaintiff also alleges that upon his arrest, an unidentified person violated an unspecified right under Miranda v. Arizona, 384 U.S. 436 (1966). (Id. ¶ 7.) Even if Plaintiff had identified who allegedly violated Miranda and how, he fails to state a claim for relief. For it is well-settled that "failing to follow Miranda procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created." Jones v. Cannon, 174 F.3d 1271, 1291 (11th Cir. 1999).

To the extent Plaintiff complains Defendant Gaiter threatened to keep him in jail from the date of his arrest to the first scheduled court date of November 25, 2013, Plaintiff acknowledges that did not happen. (Doc. no. 10, ¶¶ 7, 19.) Plaintiff posted an $800.00 bond. (Id.) Moreover,

7

allegations of verbal abuse and a threat not carried out do not state a constitutional claim. Hernandez v. Florida Dep't of Corr., 281 F. App'x 862, 866 (11th Cir. 2008).

To the extent Plaintiff complains he was unlawfully searched when he was arrested, that allegation also fails to state a claim upon which relief can be granted. Under long standing precedent, when making an arrest, a law enforcement officer may search the arrestee. Arizona v. Gant, 556 U.S. 332, 338-41 (2009). Thus, Plaintiff fails to state any valid federal claim for relief concerning the events associated with his arrest.

### c. Plaintiff Fails to State an Equal Protection Claim.

Plaintiff asserts without explanation that the events described in his complaint violated his rights to "equal protection." (Doc. no. 10, ¶¶ 1, 20.) To state a valid equal protection claim, Plaintiff must allege that similarly situated persons were treated differently from him. See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (requiring plaintiff to show that he was treated differently than similarly situated individuals to succeed on equal protection claim); see also Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1314 (11th Cir. 2006) ("different treatment of dissimilarly situated persons does not violate the equal protection clause" (citations omitted).) Here, Plaintiff does not allege that another person similarly situated to him was treated differently. Indeed, he mentions no other person having similar experiences to the ones he describes in his amended complaint. Thus, he fails to state an equal protection claim.

### d. Plaintiff Fails to State a Due Process Claim.

Plaintiff further claims that his due process rights were violated. The nature of his claim is not entirely clear because he first makes a general declaration in the opening paragraph of his amended complaint that his "constitutional rights to due process" were violated, and then he declares without explanation that his due process rights were violated while he was in custody

pursuant to his arrest. (Doc. no. 10, ¶¶ 1, 7.) Plaintiff later appears to suggest that perhaps his due process rights were violated because he was not given a hearing prior to his arrest, and thus his "right to freedom of movement, both intrastate and interstate travel with the right to inmate [sic] association" was violated. (Id. ¶ 14.)

The law is well-settled that "the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir.1994) ("In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."). Plaintiff does not explain, and the Court is not aware, of any law requiring a hearing prior to arrest when an officer has probable cause to believe an offense has been committed. Indeed, as described *supra*, minor offenses, even misdemeanors or traffic violations, can validly serve as the basis for a full custodial arrest. Atwater, 532 U.S. at 354. Upon his arrest, Plaintiff utilized available state processes to bond out of jail and obtain later court dates to challenge his citations. Indeed, utilization of the available processes allowed for him to successfully have his charges dismissed. As the state provided a process to remedy any perceived procedural deprivation, Plaintiff fails to state a valid due process claim.

### e. Plaintiff Fails to State a Supervisory Liability Claim Against the Mayor or Chief of Police of Wadley, Georgia.

Plaintiff also fails to state a valid claim for relief against Mayor Harold Moore or Chief of Police Lewis because Plaintiff is attempting to hold them liable merely in light of their supervisory positions. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v.

9

Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Rosa v. Florida Dep't of Corr., 522 F. App'x 710, 714 (11th Cir. 2013). "Because vicarious liability is inapplicable to § 1983 actions, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Rosa, 522 F. App'x at 714 (quoting Iqbal, 556 U.S. at 676) (internal quotations omitted). Therefore, to hold the Mayor or the Chief of Police liable, Plaintiff must demonstrate that either (1) Defendants actually participated in the alleged constitutional violation, or (2) there is a causal connection between Defendants' actions and the alleged constitutional violation. See Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff does not allege actual participation by either Defendant Moore or Lewis in the events about which he complains.

Likewise, Plaintiff must allege a causal connection between these two Defendants and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added). A causal connection may also be shown when the facts support "an inference that the

supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

Here, Plaintiff does not draw the necessary causal connection. Rather, Plaintiff simply repeats the mantra, without any factual detail, that liability exists because of a "lack of training and negligence in not following their duty." (Doc. no. 10, ¶ 20.) He alternatively alleges that everyone in Wadley with whom he interacted was following "official policy, statute, ordinance, code, regulation, customs, rules and custom practice," (id. ¶ 19), but he fails to allege how the Mayor or the Chief of Police were responsible for formulating or implementing these unidentified policies. Therefore, Plaintiff fails to state a valid § 1983 claim against Defendants Moore or Lewis.

### f. Even if Plaintiff had Stated a Valid § 1983 Claim Based on the Events that Led to His Arrest and Detention Prior to Posting Bond, Which He Has Not, Plaintiff Fails to State a Claim Against the City of Wadley, Georgia.

To impose § 1983 liability on a municipality, Plaintiff must show three things: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) that the policy or custom caused the violation." See McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). Nowhere in the amended complaint does Plaintiff identify any custom or policy of the City of Wadley that caused the alleged violation(s) of his constitutional rights. Plaintiff generally complains that unnamed city workers lack training because they hung up on him when he called unidentified city offices, and he asserts that all of the alleged wrongs associated with his arrest on October 20, 2013 occurred because of a "lack of training of its Police officers along with its official policy, statute, ordinance, code, regulation, customs, rules, and custom practice." (Doc. no. 10, ¶¶ 12, 19.) But in the absence of any identification of a particular policy, let alone

11

identification of how a particular policy caused a constitutional violation, Plaintiff fails to state a claim upon which relief can be granted against the City of Wadley. See Ashcroft, 556 U.S. at 678 (stating that "naked assertions devoid of further factual enhancement" will not satisfy pleading requirements of Rule 8).

### 4. Any Potential State Law Claims Should Be Dismissed.

To the extent Plaintiff may have any viable state law tort claims regarding the events alleged in his amended complaint, those should be dismissed so that Plaintiff may pursue them in state court. 28 U.S.C. § 1331, which states that District Courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States," provides the Court authority to rule in a § 1983 case. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." Id. § 1367(c)(3) (emphasis added).

Indeed, a District Court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists. See Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) (directing dismissal of state law claims when case "retains no independent basis for federal jurisdiction"); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."). Accordingly, any potential state law claims Plaintiff believes he may have should be dismissed so that he may, if he chooses, pursue them in state court.

**II. CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that this case be **DISMISSED** for failure to state a claim upon which relief can be granted, that any potential state law claims be **DISMISSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 2nd day of March, 2015, at Augusta, Georgia.

_/s/ Brian K. Epps_
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA